UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE LAMAR WILLIAMS,

        Petitioner,                        Case No. 1:16-cv-1091

v.                                           Honorable Janet T. Neff

CARMEN PALMER,

        Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner is incarcerated in the Michigan Reformatory. Following a jury trial, Petitioner was convicted in the Wayne County Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, felony murder, MICH. COMP. LAWS § 750.316(1)(b), and first-degree arson, MICH. COMP. LAWS § 750.72(1)(b). The Michigan Court of Appeals provided the following summary of the evidence presented at trial:

> This case arises from two arson-related deaths occurring on August 20, 2012, at a home in Detroit. Bobby Cross lived at the home with girlfriend Janet Smith and his stepson, Darryl Simms. Defendant is Janet's son. Defendant and his wife also lived at Bobby's home. Bobby's daughter, Jacqueline Cross, lived at the home immediately next door with her daughter Shameka Cross.
>
> Around 11:00 p.m. on August 19, 2012, Jacqueline visited Bobby's home and saw Bobby and defendant engaged in an argument. Bobby wanted defendant to pay rent, but defendant refused. Later that night, Shameka woke to the sound of Janet arguing with defendant. Janet told Shameka that Bobby was trying to shoot defendant. Around 5:00 a.m. on the morning of August 20, 2012, Shameka again heard yelling. She looked out a window and saw fire in the front porch area of her grandfather's house. She called 9-1-1. Bobby and Darryl died in the fire.
>
> When Janet arrived at the scene she told police, "I can't believe this. I think my son set the house on fire." At trial, Bobby's friend Lawrence Ingram testified that defendant once threatened to "burn this b---h out," referring to Bobby's house. Darryl's sister Deborah Simms also testified that defendant threatened to "f—k up" the house. Gary Jennings, a friend of defendant's and an inmate at the Wayne County Jail, informed police that defendant confessed to setting the fire during a conversation with Jennings.
>
> Medical Examiner Dr. Allecia Wilson testified about the autopsies she performed on Bobby and Darryl. The victims died of smoke and soot inhalation and she initially concluded that their deaths were accidental. However, after the police informed her that the fire had been intentionally set, Wilson changed the manner of death in her autopsy reports to homicide. Another doctor, Dr. Lokman Sung, signed separate "Supplemental Report[s] for a Pending Certificate of Death," also changing the manner of death for each victim. Wilson's original reports were admitted into evidence with Sung's supplemental reports attached as amendments. Sung did not testify at trial.

*People v. Williams*, No. 318856, 2015 WL 558307, at *1 (Mich. Ct. App. Feb. 10, 2015). On direct appeal, Petitioner claimed that his Sixth Amendment right to confrontation and his Fourteenth Amendment due process rights were violated when Dr. Wilson was permitted to testify regarding Dr. Sung signing supplemental death certificates changing the cause of death to homicide. He further claimed that Defense counsel was ineffective for failing to object to Wilson's testimony concerning Dr. Sung. In an unpublished opinion issued on February 10, 2015, the Michigan Court of Appeals rejected Petitioner's claims of error and affirmed his conviction. The Michigan Supreme Court subsequently denied Petitioner's application for leave to appeal on September 29, 2015.

In his application for habeas corpus relief, Petitioner raises only his claim of ineffective assistance of counsel, as follows:

> INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO OBJECT TO TESTIMONIAL EVIDENCE WITHOUT AN OPPORTUNITY FOR CROSS-EXAMINATION OF DR. WILSON WHO TESTIFIED TO DR. SUNG'S DEATH CERTIFICATES. DR. SUNG DID NOT TESTIFY.

(Pet., ECF No. 1, PageID.3.)[1]

## Standard of Review

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was

---

[1] Petitioner filed a previous habeas corpus action in this Court challenging the same conviction. *See Williams v. Palmer*, 1:16-cv-521 (W.D. Mich.). In an opinion and judgment issued on July 7, 2016, the Court dismissed the action for lack of exhaustion because the petition contained both exhausted and unexhausted claims. Rather than returning to the state court to present his unexhausted claims, Petitioner filed the instant petition raising only his exhausted claim.

adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case." *Williams*, 529 U.S. at 407. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The

presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## Discussion

Petitioner argues that counsel was ineffective when he failed to object to a violation of the Confrontation Clause when Dr. Wilson testified regarding the supplemental autopsy reports prepared by Dr. Sung, who did not testify at trial.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This "bedrock procedural guarantee" is applicable in both federal and state prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42 (2004). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. *Crawford*, 541 U.S. at 59.

In *Melendez–Diaz v. Massachusetts*, the Supreme Court expanded the definition of testimonial statements to include statements that are "functionally identical to live, in-court testimony." 557 U.S. 305, 310–11 (2009). The Court held that the prosecution violated the defendant's right to confrontation by admitting certificates of analysis identifying a substance found in the defendant's possession as cocaine. *Id.* at 329. Three years later, the Supreme Court reiterated that "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." *Williams v. Illinois*, __U.S. __, 132 S. Ct. 2221,

2228 (2012). According to *Williams*, out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which the expert's opinion rests "are not offered for their truth and thus fall outside the scope of the Confrontation Clause." *Id*. Moreover, an out-of-court statement is testimonial only if it has "the primary purpose of accusing a targeted individual of engaging in criminal conduct" and, usually, it involves a "formalized statement[ ], such as affidavits, depositions, prior testimony, or confessions." *Id*. at 2242.

The Michigan Court of Appeals found that Dr. Wilson's testimony regarding the supplemental death certificates was properly admitted, and, thus, counsel did not render ineffective assistance for failing to raise an objection. The court stated:

> On appeal, defendant argues that Wilson's testimony about Sung signing the supplemental reports violated his right to confront adverse witnesses. We disagree. Because defendant did not object to Wilson's testimony at trial, this issue is unpreserved. *See People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).
>
> The United States and the Michigan Constitutions guarantee a criminal defendant the right to confront adverse witnesses. *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011), citing US Const, Am VI; Const 1963, art 1, § 20. Out of court testimonial statements are inadmissible under the Confrontation Clause unless the witness appears at trial, or the defendant had prior opportunity to cross-examine the witness. *People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012), citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Autopsy reports are testimonial in nature and may not be introduced against the defendant at trial unless the witness who made the report is unavailable and the defendant had a prior opportunity for cross-examination. *See People v Lewis*, 490 Mich 921; 806 NW2d 295 (2011).
>
> Here, Wilson performed the autopsies and initially concluded in her autopsy reports that the manner of death for each victim was accidental. Upon learning from police that the fire was intentionally set, Wilson changed the manner of death recorded on her autopsy reports from accidental to homicide. Wilson further testified that Sung, who had signed the death certificates, also filed a supplemental report similarly changing the manner of death for each victim. Defendant argues that "Dr. Wilson's testimony about Dr. Sung, and his conclusions and changes made to his

certificates, violated [defendant's] Sixth Amendment right of confrontation." But defendant mischaracterizes Wilson's testimony. Wilson testified:

> In our field, our standard is in terms of fires caused by arson. If the investigation deems that arson was the cause of the fire, and that fire resulted in the death of a person, then the manner of death is corrected to homicide.

Wilson testified that she and Sung changed the manner of death on the autopsy reports and death certificates as a matter of routine practice to conform to the results of the police investigation of the fire. She did not testify that Sung formed any opinion regarding the manner of the victims' deaths. And Wilson had firsthand knowledge of Sung's reasons for signing the supplemental reports. Accordingly, there was no error, plain or otherwise, in admitting Wilson's challenged testimony. And defendant's ineffective assistance of counsel claim premised on this argument is also without merit. "Trial counsel is not required to advocate a meritless position." *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

But even if the admission of Wilson's testimony in this regard constituted plain error, defendant has not established that such error affected his substantial rights. *See People v. Carines*, 460 Mich. 750, 763, 764; 597 NW2d 130 (1999). In brief, Jacqueline, Shameka, Ingram, and Deborah all testified that defendant and Bobby argued frequently, and that Bobby did not want defendant living in his home without paying rent. Jacqueline, Shameka, and Deborah also understood that defendant physically struck Bobby during a previous argument. Ingram and Deborah testified that defendant made threats to burn or "f--k up" Bobby's house. Janet told police immediately after the fire, "I think my son set the house on fire." Jennings also testified that defendant told him that he had intentionally set the fire. In light of the record evidence, defendant has not demonstrated prejudice from the alleged error, i.e., that the error affected the outcome of the trial. *See id.*

*Williams*, 2015 WL 558307, at *2.[2]

---

[2]Notwithstanding the Michigan Court of Appeals finding that the autopsy reports were testimonial, federal courts have observed that there is no clearly established Supreme Court precedent that autopsy reports and death certificates are testimonial in nature. *Mitchell v. Kelly*, 520 F. App'x 329, 331 (6th Cir. 2013) ("[T]he decision of the Ohio Court of Appeals was not an unreasonable application of *Crawford* given the lack of Supreme Court precedent establishing that an autopsy report is testimonial."); *see also Cato v. Prelesnik*, No. 1:08-cv-1146, 2012 WL 2952183 at *3 (W.D. Mich. July 18, 2012) ("[W]hen his conviction became final in 2005, no clearly established Supreme Court precedent established the right he seeks to vindicate. *Cato* cites to *Crawford v. Washington*, but though it was decided in 2004, *Crawford* did not clearly establish that autopsy results are testimonial in nature. Indeed, as the magistrate judge notes, even under *Melendez–Diaz* this conclusion is uncertain."); *Hensley v. Roden*, 755 F.3d 724, 735 (1st Cir. 2014) (concluding that neither *Crawford* nor *Melendez-Diaz* clearly establish that autopsy reports are testimonial); *Vega v. Walsh*, 669 F.3d 123, 128 (2d Cir. 2012) (concluding that even if it were true that autopsy reports were testimonial under *Melendez-Diaz* or *Bullcoming v. New Mexico*, 564 U.S. 647 (2011), they were not clearly established to be so under *Crawford* and *Crawford* was the appropriate measure when the conviction became final); *McNeiece v. Lattimore*, 501

Here, Dr. Wilson, who prepared the autopsy reports, testified at trial and was subject to cross-examination by the defense. Dr. Wilson explained that she and Dr. Sung automatically changed the cause of death on the autopsy reports and death certificates from accident to homicide after learning from police that the fire was an arson. As noted by the Michigan Court of Appeals, there was no indication that Dr. Sung had conducted any independent review of the case or formed an independent opinion as to the cause of death. Counsel's failure to make a frivolous or meritless objection does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). The lack of an objection also was reasonable trial strategy, as requiring Dr. Sung to appear in court and testify regarding the supplemental death certificate would have drawn additional attention to the fact that the cause of death was changed to homicide.

Petitioner also cannot show that he was prejudiced by counsel's failure to raise an objection. Dr. Wilson's testimony regarding the supplemental death certificates was cumulative of her testimony regarding the autopsy reports. Furthermore, Petitioner does not dispute that the victims died as a result of the fire. The issue at trial was whether Petitioner set the fire that killed them. As outlined by the Michigan Court of Appeals, the prosecutor presented more than ample evidence of Petitioner's guilt. The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption

---

F. App'x 634, 636 (9th Cir. 2012) (same); *but see United States v. Ignasiak*, 667 F.3d 1217, 1229-233 (11th Cir. 2012) (concluding that under *Crawford*, *Melendez-Diaz*, and *Bullcoming* autopsy reports from Florida's Medical Examiners Commission, part of the Department of Law Enforcement, were testimonial). In the absence of clearly established Supreme Court precedent that the death certificates were testimonial, the admission of Dr. Wilson's testimony regarding the death certificates or the death certificates themselves does not implicate the Confrontation Clause.

by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Petitioner does not dispute the court of appeals' factual findings. In light of those facts, there is no reasonable probability that the verdict would have been different had the supplemental autopsy reports been excluded. Accordingly, the decision of the Michigan Court of Appeals was not an unreasonable application of *Strickland*.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant

service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   January 30, 2017             /s/ Janet T. Neff
                                      Janet T. Neff
                                      United States District Judge